Affirmed and Opinion filed May 30, 2006









Affirmed
and Opinion filed May 30, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00876-CR

____________

 

TRACY LAMAR PAYNE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 949,602

 



 

O P I N I O N

In this case, appellant Tracy Lamar Payne
asks us to evaluate the legal and factual sufficiency of the evidence
supporting his conviction for the murder of Billy Williams.  He also asks us to determine whether the trial
court erred when it submitted a jury charge that authorized the jury to convict
appellant as either a principal or a party over appellant=s objection that
the record contains no evidentiary support for the charge.  Because the evidence is legally and factually
sufficient to sustain appellant=s conviction, and
because we find no reversible error in the jury charge, we affirm.








I.  Factual and
Procedural Background

On the evening of
May 2, 2003, Billy Williams went to a bar in Houston, Texas with several
friends, including Sequinia Moore and Lonnie Harris.  Appellant and his brother Taft were also at
the bar that evening.  Both appellant and
Taft knew Williams and his friends.  A
disagreement arose between Taft and Williams and the two began arguing.  At this point, the testimony of the
prosecution and defense witnesses diverge; however, it is undisputed that
Williams was killed during a fight in the parking lot of the bar sometime after
this argument, and that his death was caused by multiple stab wounds
accompanied by blunt impact trauma to the head. 

In separate statements to police, Moore
and Harris said that Taft, appellant, and Williams exited the bar and began
fighting outside; that appellant struck Williams on the head, knocking him to
the ground; that one of the two brothers yelled, ALet=s go!@; that both
brothers then fled the scene; and that Taft folded a knife and put it in his
pocket as he fled. Bar patron Jimmy Wheeler identified appellant from a photo
lineup.  He told police appellant invited
Williams to Ago outside@ where appellant
and another man Ajumped@ Williams in the
parking lot.  Appellant and Taft were
arrested and charged with murder.

II. 
Issues Presented

Appellant presents six issues for our
review.  In his first two issues, he
argues there is no evidence to support the jury charge permitting his
conviction as a principal or a party in causing Williams=s death with a
knife.  In issues three and four,
appellant contends the evidence is legally insufficient to support his
conviction as a principal or a party.  In
issues five and six, he challenges the factual sufficiency of the evidence
supporting his conviction as a principal or a party.  








III.  Evidence
at Trial

Three purported
eyewitnesses to the murder testified at trial. 
According to Moore, Taft and Williams had an argument in the bar and
Williams=s party decided to
leave.  As Moore waited outside, Taft
exited the bar, followed by appellant and Williams.  Moore described the events leading up to the
fight in her testimony:

THE STATE: As they walk out, describe for the ladies and
gentlemen what you observe.

MOORE:                They was talking, arguing and
arguing and they put up they [sic] dukes.

THE STATE: . . . Who put up their dukes?

MOORE:                Taft and [Williams].

THE STATE:          What happened?

MOORE:                That=s when [appellant] knocked him in
the head.

* * *

THE STATE:          I want you to describe that for the
ladies and gentlemen of the jury.  I want
you to be [appellant] and I=ll be [Williams], and I want you to show them how he struck
[Williams].

MOORE:                Like that (indicating).

THE STATE:          Okay. 
With his two hands?

MOORE:                All I could see was it go
up.  I didn=t see no object or nothing.

Moore testified that Williams then turned
and fell on his back, and Taft and appellant continued to strike Williams as he
lay on the ground.  Taft struck Williams
in the Aupper head portion@ of his body and
on his chest, while appellant was on Williams=s lower torso,
striking Williams Aall over.@  Within a few seconds, appellant ran to his
vehicle, calling, ALet=s go!@ to his
brother.  Moore testified that she saw
Taft fold a knife and put it in his pocket before getting into appellant=s vehicle, and the
two men fled the scene together. 
According to Moore, she was eight or nine feet away from Williams during
the fight.








Harris testified
that he saw Taft and Williams arguing in the bar.  Harris further testified that he went to his
car for cigarettes and witnessed the fight while he was walking back to the
bar.  Harris stated Williams, Taft, and
appellant were standing in the parking lot, and Taft and Williams already had Aexchanged blows@ before appellant Acame from behind@ Williams and
struck Williams in the head.  Williams
twisted and fell on his back, and Harris could see that Williams was
bleeding.  According to Harris, appellant
and Taft then stopped attacking Williams, and Harris heard one of the brothers
yell, ALet=s go!@  Harris did not know which of the two brothers
spoke.  Harris also testified that he saw
Taft fold a knife and put it in his pocket, but he was unsure if the brothers
fled together or in separate vehicles.

Jimmy Wheeler did
not previously know Williams, Taft, appellant, or the other witnesses.  Wheeler testified that just before the fight,
he had been standing about one and one-half feet from Williams at the bar.  According to Wheeler, Williams pointed out
Taft and stated, ASee that guy over there?  That guy told me if I continue to talk to his
girl, he=s going to kill
me.@  Wheeler further testified that Taft
approached Williams ten to fifteen seconds later, and Wheeler heard Taft
whisper to Williams, AI hear that.  I told you to leave her alone.  I=m going to kill
you if you keep messing with her.@  According to Wheeler, Taft left the bar, and
appellant approached Williams seconds later. 
Wheeler heard appellant say to Williams, Alet=s step outside,@ and watched
Williams follow appellant out of the bar. 
Wheeler testified that appellant and Taft Ajumped on
[Williams] immediately.@ 
Wheeler stated that he ran outside and saw appellant and Taft run from
the scene, and drive away in separate vehicles. 








Dr. Dwayne Wolf, a
deputy medical examiner for Harris County, testified about the medical
findings.  Autopsy photographs showed
that Williams had ten stab wounds and a single blunt impact injury.  Williams was stabbed three times in the
chest, and the knife punctured his heart and both lungs.  Another stab wound was located on Williams=s left shoulder,
and another was located high on Williams=s forehead.  All of the remaining five stab wounds were
inflicted on the back of Williams=s head and
neck.  The single blunt impact injury was
located near the top of Williams=s head, adjacent
to the stab wound on his forehead.  Dr.
Wolf also testified that a knife is considered a deadly weapon; that a blunt
object can be used as a deadly weapon; and that striking someone in the head is
an act that can be considered clearly dangerous to human life. 

          Appellant offered the testimony of
Shirley Moore,[1]
who testified there was no fight between Williams and the Payne brothers.  She stated she was with Taft and appellant at
the bar, and that the three of them left at the same time.  She further testified that appellant walked
her to her car, and that she and appellant each drove to her home in their
respective vehicles. 

Casimiur Johnson
testified that when he arrived at the bar, Taft was leaving and held the door
for Johnson.  Johnson stated that
appellant left at the same time.  Johnson
testified that he went to the pool table area of the bar and could not see
through the windows into the parking lot. 
He further testified that about forty-five minutes after he arrived,
people started yelling that there was a fight outside.  Johnson stated he went outside and saw a man
lying in a pool of blood.  Johnson was
unsure whether appellant and Taft were in the parking lot at that time.  During the State=s cross
examination, Johnson agreed that a pool ball is a blunt object and that someone
could have taken a pool ball from the bar and kept it in his hand.

Nicole Thompson
testified that her husband left their home on May 2, 2003 and returned the
following morning with a red substance on his shirt that appeared to be
blood.  Thompson stated that her husband
claimed he had been in a fight at a bar and that the substance on his shirt was
his opponent=s blood. 
She observed cuts on her husband=s hands, but
stated that her husband denied using any weapon other than his fists.  Thompson called police, who took her husband
to the police station.  A certified crime
scene investigator testified that she analyzed the stain and concluded the red
substance was not blood.








IV.  Discussion

A.      Is the Evidence Legally Sufficient To
Support Appellant=s Conviction?

We
begin our analysis by addressing appellant=s third and fourth
issues, in which he contends the evidence is legally insufficient to support
his conviction as a principal or as a party. 
We may examine the sufficiency of the evidence under both theories
together because the evidence is legally sufficient if it supports either
theory.  See Rabbani v. State, 847
S.W.2d 555, 558 (Tex. Crim. App. 1992) (en banc) (AThe principle is
well-established that when the jury returns a general verdict and the evidence
is sufficient to support a guilty finding under any of the allegations
submitted, the verdict will be upheld.@).

1.       Standard of Review

When
reviewing the legal sufficiency of the evidence, we examine the evidence in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Mason v. State, 905
S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc). 

A
person commits murder if he intentionally or knowingly causes the death of an
individual or if he intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of an individual.  Tex.
Penal Code Ann. ' 19.02(b)(1), (2) (Vernon 2003).  The jury may infer the existence of an intent
to kill from the use of a deadly weapon. 
Brown v. State, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003).  The jury may also infer an intent to cause
serious bodily injury from the acts or words of the accused, the manner in which
the offense was committed, the nature of the wounds inflicted, and the relative
size and strength of the parties.  Nickerson
v. State, 69 S.W.3d 661, 667 (Tex. App.CWaco 2002, pet.
ref=d). 








A person is criminally responsible as
a party to an offense if the offense is committed by his own conduct, by the
conduct of another for which he is criminally responsible, or by both.  Tex.
Penal Code Ann. ' 7.01 (Vernon 2003).  A
person is criminally responsible for an offense committed by another if, with
intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.  Id. ' 7.02(a)(2).  In determining whether the accused acted
as a party, the court may look to events occurring before, during, and after
the commission of the offense and may rely on actions of the defendant that
show an understanding and a common design to do the prohibited act.  Ransom v. State, 920 S.W.2d 288, 302
(Tex. Crim. App. 1994).

2.         Analysis

Wheeler
testified that appellant invited Williams outside, where Taft was waiting.  Both Moore and Harris testified that
appellant struck Williams, causing him to fall to the ground, and Moore
testified that Taft and appellant continued the attack together.  Moore further testified that the two men fled
the scene together at appellant=s urging.  All three witnesses agreed that appellant
participated in the fight.  We therefore
conclude that a rational trier of fact could find beyond a reasonable doubt
that appellant=s actions were intended to and did aid
Taft in causing Williams=s death with a knife.  Because the evidence is legally sufficient to
support appellant=s conviction as a party in the stabbing,
we need not consider the legal sufficiency of the other theories
submitted.  See Rabbani, 847
S.W.2d at 558.  We overrule appellant=s third and fourth
issues.

B.      Is the Evidence Factually Sufficient To Support
Appellant=s Conviction?

1.       Standard of Review








In
conducting a factual sufficiency review, we will set aside the verdict only if
(1) the evidence supporting the verdict, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt, or (2) contrary
evidence, if present, is strong enough that the beyond-a-reasonable-doubt
standard could not have been met.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  The analysis must answer the single ultimate
question: Considering all the evidence in a neutral light, was the jury
rationally justified in finding appellant guilty beyond a reasonable
doubt?  Id.  When reviewing the evidence, we must give
appropriate deference to the jury=s findings in
order to avoid intruding on the factfinder=s role as the sole
judge of the weight and credibility of the witness testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000) (en banc).  We do not
re-evaluate the credibility of witnesses or the weight of evidence, and we will
not substitute our judgment for that of the factfinder.  Johnson v. State, 967 S.W.2d 410, 412
(Tex. Crim. App. 1998).  Therefore,
unless the record clearly reveals a different result is appropriate, we Amust defer to the
jury=s determination
concerning what weight to give contradictory testimonial evidence because
resolution often turns on an evaluation of credibility and demeanor.@  Johnson, 23 S.W.3d at 8.

2.       Analysis

In a factual
sufficiency review, we must discuss the evidence appellant argues best supports
his claim.  Sims v. State, 99
S.W.3d 600, 601 (Tex. Crim. App. 2003). 
Appellant argues the evidence does not support the conclusion that he
acted as a principal in killing Williams with a knife because only Taft was
seen with a knife, and none of the witnesses saw a weapon in appellant=s hands.  Appellant also argues that the evidence is
factually insufficient to support his conviction as a party because, Athere is no
evidence that he even knew Taft had a knife, or would introduce it into what
appeared to be only a barroom brawl.@  Appellant argues that such evidence is Aessential to a
rational jury finding that appellant was guilty as a party . . . when the
evidence is viewed in a neutral light.@  








To support this
proposition, appellant relies upon Vodochodsky v. State, 158 S.W.3d 502
(Tex. Crim. App. 2005) and Schiffert v. State, 157 S.W.3d 491 (Tex. App.CFort Worth 2005,
pet. granted), both of which reversed murder convictions for factually
insufficient evidence.  In both Vodochodsky
and Schiffert, however, the defendant was merely present during the
murder but did not actively participate in the physical attack.  Thus, both Vodochodsky and Schiffert
are distinguishable from the facts of this case. 

Appellant also
relies on Schiffert to support his contention that his culpability as a
party is dependent on his knowledge that his brother had a knife and intended
to stab the victim.  To the extent that Schiffert
can be read to stand for the proposition that a party is not culpable if he
does not know that the principal possesses and intends to use a particular type
of weapon to commit an offense, we decline to follow it. 

Evidence contrary
to the verdict is not strong enough to prevent the State from meeting its
burden of proof beyond a reasonable doubt. 
Appellant=s defense was based on mistaken identity,
and the jury could not have convicted him if it had found Shirley Moore=s testimony more
credible than that of Sequinia Moore, Harris, and Wheeler.  As the finder of fact, it was within the jury=s province to make
credibility determinations, and we will not intrude upon that province on
appeal.  Johnson, 23 S.W.3d at
7.  After examining the evidence of
appellant=s actions before, during, and after the
murder in a neutral light, a rational jury could have found beyond a reasonable
doubt that appellant intentionally aided his brother in stabbing Williams to
death.  Accordingly, we overrule
appellant=s fifth and sixth issues.

C.      Did the Trial Court Err in Submitting a
Jury Charge Authorizing Appellant=s Conviction as a Principal or a Party in Williams=s Stabbing Death?

In his first and
second issues, appellant asserts jury charge error.  The jury charge reads, in pertinent part:








[I]f you
find from the evidence beyond a reasonable doubt that . . . [appellant], did
then and there unlawfully, intentionally or knowingly cause the death of
[Williams], by stabbing [Williams] with a deadly weapon, namely, a knife; or if
you find from the evidence beyond a reasonable doubt that . . . Taft Eugene
Payne, did then and there unlawfully, intentionally or knowingly cause the
death of [Williams], by stabbing [Williams] with a deadly weapon, namely, a
knife, and that [appellant], with the intent to promote or assist the
commission of the offense, if any, solicited, encouraged, directed, aided or
attempted to aid Taft Eugene Payne to commit the offense, if he did; or . . .
if you find from the evidence beyond a reasonable doubt that . . . [appellant],
did then and there unlawfully intend to cause serious bodily injury to [Williams],
and did cause the death of [Williams] by intentionally or knowingly committing
an act clearly dangerous to human life, namely by stabbing [Williams] with a
deadly weapon, namely, a knife; or if you find from the evidence beyond a
reasonable doubt that . . . Taft Eugene Payne, did then and there unlawfully
intend to cause serious bodily injury to [Williams], and did cause the death of
[Williams] by intentionally or knowingly committing an act clearly dangerous to
human life, namely by stabbing [Williams] with a deadly weapon, namely, a
knife, and that [appellant], with the intent to promote or assist the
commission of the offense, if any, solicited, encouraged, directed, aided or
attempted to aid Taft Eugene Payne to commit the offense, if he did . . .  then you will find [appellant] guilty as
charged in the indictment. 

The jury charge accurately reflects the
applicable law and enables the jury to consider alternate means by which
appellant could have committed the charged offense.[2]  Appellant, however, argues the evidence was
insufficient to warrant a charge allowing the jury to convict him as either a
principal or a party in causing Williams=s death with a
knife.

1.       Standard
of Review








When reviewing
allegations of charge error, an appellate court must first determine whether
error actually exists in the charge.  Ngo
v. State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).  If error is found, the court must determine
whether it caused sufficient harm to require reversal.  Id. 
The degree of harm required for reversal depends on whether the
error was preserved.  Arline v. State,
721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (en banc).  If no proper objection was made at trial, the
error requires reversal only if it is so egregious and created such harm that
the appellant has not had a fair and impartial trial.  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984) (en banc) (op. on reh=g). When there has
been a timely objection to an improper jury charge, the error requires reversal
unless it is harmless.  Id.  

Although appellant
challenges the portions of the jury charge authorizing conviction as a
principal and as a party in the stabbing death of Williams, he objected at
trial only to the portion of the jury charge authorizing conviction as a
principal.  Thus, we may reverse appellant=s conviction for
charge error only if the trial court: (1) erred in submitting appellant=s culpability as a
party in the stabbing death of Williams and the error caused appellant
egregious harm; or (2) erred in submitting appellant=s culpability as a
principal in the stabbing death of Williams 
and the error caused appellant some harm.  The actual degree of harm must be assayed in
light of the entire jury charge, the state of the evidence, including the
contested issues and the weight of probative evidence, the arguments of counsel
and any other relevant information revealed by the record of the trial as a
whole.[3]  Id.

2.       Culpability
as a Party








As discussed
above, the evidence is legally and factually sufficient to support appellant=s conviction under
the law of parties.  Specifically, the
evidence supports a finding that appellant intended to and did aid Taft in
committing the murder by inviting Williams outside, by knocking Williams down,
by striking Williams, and by signaling when to end the attack.  Thus, we conclude the trial court did not err
in authorizing the jury to convict appellant as a party.  Accordingly, we overrule appellant=s second issue.

3.       Culpability as a Principal

Appellant
argues the trial court erred in submitting the portion of the jury charge
authorizing the jury to convict appellant as a principal because the autopsy
photographs and Dr. Wolf=s testimony indicate that the stab wounds
were all located on Williams=s head and upper
torso.  Appellant also points to Moore=s testimony that
when appellant and Taft struck Williams as he lay on the ground, appellant was Aon the lower torso@ and Taft was
hitting Aon the upper head
portion.@  Appellant contends there is no evidence that
he struck Williams in these areas and therefore, no evidence that he caused
these wounds.[4]  Finally, appellant notes that two witnesses
saw Taft with a knife, but no witnesses claimed to have seen appellant with a
weapon.

Assuming for the
purposes of this discussion that the evidence is legally insufficient to
support appellant=s conviction as a principal, and that the
trial court erred in authorizing the jury to convict on this basis, we consider
the Almanza factors to determine whether the alleged error harmed
appellant.  








When a charge
authorizes a jury to convict a defendant as a principal or a party and the
evidence establishes the defendant=s guilt only as a
party, error in submitting the defendant=s guilt as a
principal is harmless under the Almanza standard.  See Watson v. State, 693 S.W.2d 938,
939B42 (Tex. Crim.
App. 1985) (en banc).  In Watson,
the defendant was charged with burglary. 
Id. at 939.  The only
evidence of the defendant=s guilt were his statements that he and
two other men planned to burglarize the complainant=s home; that he
waited outside in a car while others removed property from the residence; and
that he opened and disposed of some gifts removed from the building by
others.  Id. at 940.  Although there was no evidence the defendant
entered the building, the jury charge permitted the defendant to be convicted
if the jury found that he committed the burglary Aacting either
alone or as a party to the offense.@  Id. 
The Court held the charge was not harmful under Almanza because Athe evidence
presented at trial clearly showed [the defendant=s] guilt as a
party.@  Id. at 941.  This principle is now firmly entrenched in
Texas law.[5]  We also note that this analysis and result is
consistent with federal criminal law.  See
Griffin v. United States, 502 U.S. 46, 51B60 (1991).








As discussed
above, the evidence clearly supports appellant=s guilt as a
party, and the State emphasized this theory.  
Although the prosecutor stated that some members of the jury could believe
appellant acted as a principal, the State did not encourage the jury to reach
that conclusion, nor did it direct the jury to any evidence that would support
appellant=s guilt as a principal.[6]  After considering the entire jury charge, the
evidence, the arguments of counsel, and all other relevant information revealed
by the record, we conclude that any error in authorizing the jury to convict
appellant as a principal was harmless.[7]  Accordingly, we overrule appellant=s first issue. 








V.  Conclusion

In sum, we hold the evidence is legally
and factually sufficient to support appellant=s conviction for
the murder of Billy Williams. We further hold the trial court did not err in
charging the jury on appellant=s potential guilt
as a party and that any error in charging the jury as to appellant=s potential guilt
as a principal was harmless.  Therefore,
we affirm the trial court=s judgment.

 

 

/s/      Eva
M. Guzman

Justice

 

 

Judgment rendered
and Opinion filed May 30, 2006.

Panel consists of
Justice Fowler, Frost, and Guzman.

Publish C Tex.
R. App. P. 47.2(b).











[1]  It is unclear
if Sequinia Moore and Shirley Moore are related.





[2]  The charge error
at issue in the instant case does not involve an alleged misstatement of the
law; rather, it involves an alleged error in charging the jury on a theory of
guilt not raised by the evidence.  See
Griffin, 502 U.S. at 56B60 (distinguishing between charge error in which the
charge correctly states the law regarding a theory of guilt not supported by
legally sufficient evidence and charge error involving legal deficiencies such
as misstating the law or applying a statute that violates a constitutional
provision); see also Guevara v. State, CS.W.3dC,C, No. 04-00-00340-CR, 2005 WL 3295657, at *1B4 (Tex. App.CSan
Antonio Dec. 7, 2005, pet. ref=d) (en banc) (distinguishing a charge containing a
misleading statement about the law from a charge that correctly states the law
but erroneously charges on a theory of guilt not supported by the evidence at
trial).





[3]  Appellant
suggests we follow the harm analysis used in civil cases when an invalid theory
of liability is submitted in a broad-form charge.  See Crown Life Ins. Co. v. Casteel, 22
S.W.3d 378, 387B88 (Tex. 2000) (holding that submitting invalid
theories of liability in a single broad‑form jury question is harmful
error when it cannot be determined whether the jury based its verdict on one or
more of the invalid theories).  However,
adopting a Casteel harm analysis in this case would conflict with
binding precedent.  See, e.g., Reyes
v. State, 741 S.W.2d 414, 424B26 (Tex.
Crim. App. 1987) (en banc); Watson v. State, 693 S.W.2d 938, 940B41 (Tex. Crim. App. 1985) (en banc); Stevenson v.
State, 745 S.W.2d 45, 47 (Tex. App.CHouston
[14th Dist.] 1987, no pet.); Martin v. State, 704 S.W.2d 892, 895 (Tex.
App.CHouston [14th Dist.] 1986, no pet.).  The Casteel harm analysis is not on
point and should not be applied in cases involving different means of
committing a single offense.  See
Bagheri v. State, 119 S.W.3d 755, 761B62 (Tex.
Crim. App. 2003).





[4]  However, two
witnesses testified appellant struck Williams in the head.  





[5]  See, e.g.,
Reyes, 741 S.W.2d at 424B26 (assuming there was no evidence of the defendant=s guilt as a principal in the murder and concluding
that any error in charging the jury on the defendant=s guilt as a principal was harmless because the
evidence clearly supported his guilt as a party); Stevenson, 745 S.W.2d
at 47 (relying on Watson and holding that, even if no evidence supported
the defendant=s guilt as a principal, any error in charging the jury
as to the defendant=s guilt as a principal to the murder was harmless); Martin,
704 S.W.2d at 895 (relying on Watson and stating that, even if no
evidence supported the defendant=s guilt
as a principal, any error in charging the jury on the defendant=s guilt as a principal was harmless); Bruton v.
State, 921 S.W.2d 531, 537B38  (Tex. App.CFort Worth 
1996, pet. ref=d) (holding that the trial court=s error in charging the jury on the defendant=s guilt as a principal was harmless); Guillory v.
State, 877 S.W.2d 71, 73B74 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d) (relying on Watson and holding that, even if
no evidence supported the defendant=s guilt
as a principal, any error in charging the jury was harmless).





[6]  The prosecutor
told the jury it could convict appellant if it found appellant guilty in one of
eight ways.  The prosecutor further told
the jury:  

 

[W]hat you=ve got to do when you go back there to deliberate is
you think to yourself >Did [appellant] or Taft Payne do one of those specific
things we talked about?  Did they
intentionally or knowingly stab, strike with a blunt object, or do one of two
ways something clearly dangerous to human life?=  And then you think if they didn=t do the specific act, were they a party to the act
done by the other individual?  If you
decide, okay, in my opinion, Taft Payne had the knife, stabbed Billy Williams,
then your next step in that process is, does that mean that [appellant] is a
party to the action of the other one . . . As an individual, you have to be
convinced that one of those eight ways happened, but as a group, you don=t have to decide which one of them happened.  What does that mean?  It means two of you can believe [appellant]
had the knife and stabbed [Williams] intentionally and knowingly.  Two can believe [appellant] had the
knife.  Two can believe [appellant]
assisted, intentionally and knowingly. 





[7]  Appellant
cites a number of cases that are not on point and do not alter our analysis in
this case.  See Guevara v. State,
152 S.W.3d 45, 52B54 (Tex. Crim. App. 2005) (holding that the court of
appeals erred in applying a Rule 44.2(b) instead of an Almanza harm
analysis to jury charge error and stating that charge-error cases are
distinguishable from Bagheri); Bagheri v. State, 119 S.W.3d 755, 763B64 (Tex. Crim. App. 2003) (reversing a conviction
where it was impossible to tell whether the jury convicted the defendant on the
basis of erroneously admitted testimony); Ovalle v. State, 13 S.W.3d
774, 785B88 (Tex. Crim. App. 2000) (en banc) (concluding that
some harm resulted from an erroneous instruction authorizing the jury to
consider all evidence from the guilt/innocence phaseCwithout mentioning evidence from the punishment phaseCin the punishment phase of death penalty case);
Hutch v. State, 922 S.W.2d 166, 170B74 (Tex.
Crim. App. 1996) (en banc) (plurality op.) (finding egregious harm from a jury
instruction that did not correctly state the applicable law); Johnson v.
State, 739 S.W.2d 299, 302B5 (Tex. Crim. App. 1987) (en banc) (plurality op.)
(reversing a conviction when the evidence raised an issue as to whether the
defendant was guilty under the law of parties and the trial court denied the
defendant=s request to have the charge apply the law of parties
more explicitly to the facts of the case); Bufkin v. State, 179 S.W.3d
166, 172B75 (Tex. App.CHouston
[14th Dist.] 2005, pet. granted) (concluding that some harm resulted from the
trial court=s erroneous refusal to charge the jury on the defense
of consent and relying on the Court of Criminal Appeals=s precedents addressing a trial court=s refusal to charge the jury on defenses); Lindsay
v. State, 102 S.W.3d 223, 230B31 (Tex.
App.CHouston [14th Dist.] 2003, pet. ref=d) (concluding that some harm resulted from the trial
court=s refusal to include the statutory definition of Acriminal responsibility@ in the
punishment phase charge, even though that term was used in the charge).  Appellant also relies on Tate v. State,
but fails to note that its holding was reversed.  793 S.W.2d 760, 765  (Tex. App.CFort
Worth 1990), rev=d  811 S.W.2d 607 (Tex. Crim. App. 1991) (en
banc).