James **GUEVARA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–00–00340–CR.

Court of Appeals of Texas, San Antonio.

Dec. 7, 2005.

Discretionary Review Refused May 17, 2006.

Nancy B. Barohn, Kansas City, Mo, for appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

Opinion by KAREN ANGELINI, Justice.

A jury found James Guevara guilty as a party to the murder of his wife, Velia Guevara, and sentenced him to life in prison and a $10,000 fine. On original submission, Guevara complained of the sufficiency of the evidence, error in the jury charge, prosecutorial misconduct, and ineffective assistance of counsel. In an opinion and judgment dated December 26, 2001, we affirmed the trial court's judgment. Guevara filed motions for rehearing and for reconsideration by the en banc court. On January 31, 2003, this court, in an en banc opinion, granted Guevara's motions, withdrew our December 26th opinion and judgment, and issued an opinion and judgment in which we reversed the trial court's judgment and remanded for a new trial. In our January 2003 opinion, a majority of the en banc court held that the evidence

was legally and factually sufficient to support the verdict. However, relying on this court's opinion in *Bagheri v. State,* 87 S.W.3d 657 (Tex.App.-San Antonio 2002), *aff'd,* 119 S.W.3d 755 (Tex.Crim.App.2003) and on Texas Rule of Appellate Procedure 44.2(b), we reversed and remanded for a new trial after concluding that the error contained in the jury charge affected Guevara's substantial rights.

Both Guevara and the State petitioned the Court of Criminal Appeals for discretionary review. Guevara challenged our holding that the evidence was legally sufficient to support the verdict, and the State challenged our holding with respect to charge error. The Court of Criminal Appeals determined the evidence was legally sufficient to support the verdict. *See Guevara v. State,* 152 S.W.3d 45, 52 (Tex.Crim. App.2004). Although the Court of Criminal Appeals refused to "address whether the inclusion of the legal-duty theory in the charge was error," *id.* at 52, n. 28, the Court nevertheless determined this court applied an incorrect standard of review for charge error, and remanded the cause to this court to conduct a harm analysis under Texas Code of Criminal Procedure article 36.19.

### STANDARD OF REVIEW

Article 36.19 provides that "[w]henever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." TEX.CODE CRIM. PROC. ANN. § 36.19 (Vernon 1981). When, as here, no objection is made at trial to charge error, a defendant on appeal must show that the

error was "so egregious and created such harm that he 'has not had a fair and impartial trial.'" *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Under the *Almanza* standard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury charge error. *Dickey v. State,* 22 S.W.3d 490, 492 (Tex.Crim.App. 1999). Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Ngo v. State,* 175 S.W.3d 738 (Tex.Crim.App. 2005); *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996). On appeal, we assess the actual degree of harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171.

## CHARGE ERROR

A trial court must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State,* 152 S.W.3d 125, 127 (Tex.Crim.App.2004); Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.2004–05). "This is because '[t]he jury must be instructed 'under what circumstances they should convict, or under what circumstances they should acquit'." *Gray,* 152 S.W.3d at 127–28 (quoting *Ex parte Chandler,* 719 S.W.2d 602, 606 (Tex.Crim.App. 1986)). "Jury charges which fail to apply the law to the facts adduced at trial are erroneous." *Id.* at 128.

The jury charge here contained two theories under which the jury could find Guevara criminally responsible for his wife's murder: (1) that Guevara solicited, encouraged, directed, aided, or attempted to aid

another person in committing the offense ("the aiding theory"), or (2) that Guevara did not make a reasonable effort to prevent the commission of the offense when he had a legal duty to do so ("the legal duty theory"). The abstract portion of the charge informed the jury that:

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. Each party to an offense may be charged with commission of the offense.

Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; *or having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.* [Emphasis added.]

The charge did not define "legal duty" for the jury. The charge did not set forth the elements of any legal duty Guevara may have owed to Velia, nor did it instruct the jury on when such a duty attaches. *See Kavali v. State,* No. 05–01–00835–CR, 2002 WL 31445280, *4 (Tex.App.-Dallas Nov.4, 2002, pet. ref'd) (not designated for publication) (instruction included when a party is criminally responsible and quoted Family Code provision stating parent's duty of "care, control and protection" of a child), *cert. denied,* 540 U.S. 967, 124 S.Ct. 445, 157 L.Ed.2d 313 (2003).

As a general rule, a person has no legal duty to protect another from the criminal acts of third parties or to control the conduct of another. *Walker v. Harris,*

924 S.W.2d 375, 377 (Tex.1996). And, although spouses and family members may have a moral duty to exercise care toward one another, it does not follow that a legal duty to prevent harm necessarily arises from the familial relationship. *See Ex parte Hall,* 854 S.W.2d 656, 658 (Tex.1993) (obligation that law imposes on spouses to support one another is a legal duty arising out of the status of the parties); *Rampel v. Wascher,* 845 S.W.2d 918, 925 (Tex.App.-San Antonio 1992, writ denied) (neither spouse has a legal duty to intervene forcibly in the other's decision of when and how much to drink, or whether or how to use a hot tub); *Brady v. State,* 771 S.W.2d 734, 738 (Tex.App.-Fort Worth 1989, no pet.) (appellant did not have a legal duty to prevent her husband's possession of drugs); *see also In re Marriage of Beach,* 97 S.W.3d 706, 708 (Tex.App.-Dallas 2003, no pet.) (characterizing husband's assertion that a spouse has a legal duty to reconcile as "utterly without merit").

■ On the other hand, although a spouse generally does not have a legal duty to prevent harm to the other spouse, "there may be circumstances under which one spouse could have a legal duty to the other." *Guevara,* 152 S.W.3d at 52, n. 26. A spouse may owe a legal duty to the other if one spouse was a law enforcement official or the legal guardian of the other. *Id.* However, as the Court of Criminal Appeals noted, "there was no evidence presented in this case that [Guevara] and his wife fell into any of these categories." *Id.* Thus, instructing the jury on the legal duty theory was error because Guevara did not have a legal duty to prevent the commission of the offense. *See Medrano v. State,* 612 S.W.2d 576, 578 (Tex.Crim. App.1981) (without a legal duty arising to prevent the commission of an offense, there is no criminal conduct); *see also* Tex. Pen.Code Ann. § 6.01(c) (Vernon 2003) (an omission or failure to perform an act is not an offense unless there is a legal duty to act).

The State argues that errors contained in the abstract portion of a charge do not generally require reversal. We do not disagree with this proposition when the application paragraph correctly instructs a jury. *See Medina v. State,* 7 S.W.3d 633, 640 (Tex.Crim.App.1999). However, here, the application paragraph told the jury it could convict if it found that Guevara, "either acting alone or together with another party," intentionally and knowingly caused Velia's death "by shooting [her] with a firearm" or by "commit[ting] an act clearly dangerous to human life, to-wit: by shooting at or in the direction of Velia ...," thereby causing [her death.]" Faced with the phrase "either acting alone or together with another party," and nothing more, it is entirely plausible that the jury would refer back to the charge's definition of when a person is criminally responsible for an offense committed by another person, a definition that included the legal duty theory.

■ The State asserts this error is not egregious because the evidence is sufficient to support a guilty verdict under the aiding theory. *See Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991). Guevara counters that the evidence in support of the aiding theory was not overwhelming. *See Almanza,* 686 S.W.2d at 173 (whether evidence of guilt is cogent and overwhelming is a factor in considering egregious harm). At trial, no evidence was presented that Guevara had a legal duty to his wife, and we have already held the evidence was factually sufficient to support the aiding theory. However, the State's argument ignores the nature of the insufficiency at issue here.

When disjunctive theories are submitted to the jury and the jury renders a

general verdict of guilty, appeals based on evidentiary deficiencies must be treated differently than those based on legal deficiencies. If the challenge is evidentiary, as long as there was sufficient evidence to support one of the theories presented, then the verdict should be affirmed. However, if the challenge is legal and any of the theories was legally insufficient, then the verdict must be reversed.

*United States v. Tomblin,* 46 F.3d 1369, 1385 (5th Cir.1995) (quoting *United States v. Garcia,* 992 F.2d 409, 416 (2nd Cir. 1993)). The reason for the varying treatment is that "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law-whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." *Griffin v. United States,* 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *see also Tomblin,* 46 F.3d at 1385.

■■■ A legally inadequate theory is a "mistake about the law, as opposed to a mistake concerning the weight or factual import of the evidence." *See Griffin,* 502 U.S. at 59, 112 S.Ct. 466. Such legal error occurs when, "even if the government proved everything it possibly could prove, the defendant's conduct would not constitute the crime charged." *Tomblin,* 46 F.3d at 1386. Under these circumstances, "the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States,* 354 U.S. 298, 313, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *see also Griffin,* 502 U.S. at 59, 112 S.Ct. 466 (legal error is controlled by *Yates*). Here, because Guevara had no duty to prevent Velia's death, his conviction for her murder could have been based on a legally insufficient ground. Thus, even if the evidence and instructions properly allowed the jury to convict under the aiding theory, we cannot presume the jury based its verdict on the legally sufficient ground. *See Tomblin,* 46 F.3d at 1386.

The error was compounded by the State's repeated urging of the jury to find Guevara guilty as a party because he failed to protect Velia. During voir dire, the prosecutor explained the aiding theory to the jury and provided various examples, such as a get-away driver in a bank robbery. A venire-person then asked, "Are you also to consider a party to the crime if you didn't do anything to prevent it? If you were in a position where you didn't know—you weren't part of the plan, but you were—you were with the group and could have prevented it at the time, like in a gang situation?" The prosecutor answered,

That would depend on the circumstance. Usually in the law you have to have some type of affirmative duty to assist somebody before you can be charged with a crime of omission. But there are also some circumstances where what you are saying might be useful as far as determining whether someone aided or assisted.

Let's suppose your job is you are a bodyguard, all right, and if you are a bodyguard, what is your job? Your job is to keep people from coming after the person that you are protecting. But if you as a bodyguard, with the intent to aid or assist in the commission of the offense, step away and let those people go forward and harm that person, then a

jury could convict you as being a party to the offense because you did something and you aided or attempted to aid in doing that.

It's a different story than if you just happened to know about a crime and don't do anything about it, all right. But sometimes in a situation not doing— it would be a rare situation, but making yourself where you no longer were able to protect that person, if it aids, if it assists and you are doing it with the intent to promote. All right? I think that is the important thing to think about. . . . Does that make sense?

. . .

Yeah. We are not talking about the situations where you don't know what is going on and we are not talking about the situation where you do know what's going on but you don't want it to happen. Not the person who is just along for the ride and doesn't want it to happen.

We are talking about a situation where somebody is assisting or encouraging the act even if it is by something they don't do. Like I said, you can be a bodyguard who steps aside. It can be a very minor act. You can procure the bullets for the gun. You could basically do just about anything as long as that one act, or more than one act, aids, assists, attempts to aid, encourages, solicits the act and you do so with the intent to promote or assist. . . . .

The discussion during voir dire and the instruction on legal duty set the stage for the State's closing argument, during which the prosecutor again focused on Guevara's absence from his home on the day Velia was shot:

This man sat there as Minnie Salinas was identified as his wife's killer. The law is if with the intent to promote or assist in the commission of the offense, you solicit, encourage, direct, aid, or attempt to aid in any way, shape or form, no matter how small it is, you are a party to the offense of murder. And this man did.

We talked about the fact it can be very small. It can even sometimes be the situation of a bodyguard stepping out of the way and that is aiding or attempting to aid in the commission of the offense. And we know that this Defendant did many things. He took Minnie Salinas to the shooting range, watched and helped her fire a .9 millimeter weapon. . . . .

. . .

We know the Defendant, perhaps the most horrible thing he did was arrange to be away at the time of the murder, taking one little bit of protection away, because we know Minnie Salinas would never go into an apartment and kill Velia Guevara with him actually there.

. . .

He got rid of the only handgun, the only handgun that was in the apartment, that no matter what your feelings on handguns you might believe that was some protection to her and he got rid of it. What does he say he did with it? He says, "I gave it to Minnie Salinas because she had lent—she needed the revolver because she had loaned her .25 caliber gun to her friend Tina," Tina Zimmerman, the same woman who testified in front of you and said, "I never had Minnie Salinas' handgun." There was no reason for him to give the gun to Minnie Salinas, his current wife.

. . .

And then the most serious thing, he diverts all the police attention away

from Minnie Salinas. He lies to the police. He says they are happy together, he and his wife.

Any of those things are sufficient to find this Defendant guilty of murder, aiding and assisting in the murder. You can look at things before, during and after the murder to determine guilt. . . . .

The State argues that, in each instance, the prosecutor merely used hypotheticals to illustrate the concept of an accomplice affirmatively aiding and assisting the primary actor. We disagree. The State began its case by placing before the jury the image of a man who steps aside and allows harm to come to another individual. The State closed with the same image, emphasizing Guevara arranged to be away from home at the time of his wife's murder, "taking one little bit of protection away," and getting rid of a gun that might have provided Velia with "some protection."

Guevara's absence from his home the day Velia was shot was a theme central to the State's presentation of its case. His absence, coupled with a jury charge that authorized the jury to convict him of the offense of not making a reasonable effort to prevent Velia's death, although he had no legal duty to do so, created such harm that Guevara did not receive a fair and impartial trial.

## CONCLUSION

After examining the instructions and the proceedings as a whole, we conclude egregious harm resulted from the erroneous jury instruction. We reverse the trial court's judgment and remand the cause to the trial court for a new trial.