

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00013-CR

JOSHUA WILEY MITCHELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 27468

Before Morriss, C.J., Burgess and Moseley,* JJ.
Opinion by Justice Moseley

*Bailey C. Moseley, Justice, Retired, Sitting by Assignment

# O P I N I O N

After a jury trial in Lamar County, Texas, Joshua Wiley Mitchell was convicted of tampering with a witness, aggravated assault with a deadly weapon, and family violence assault and was sentenced to fifty years in prison for each offense, with the three sentences to run concurrently.[1]

Here, Mitchell appeals from his conviction for tampering with a witness.[2] On appeal, Mitchell contends that (1) the trial court erred in denying his request for a psychological examination, (2) a defective jury charge caused him egregious harm, and (3) the trial court erred in assessing court costs against him.

By order dated August 29, 2018, we sustained Mitchell's first point of error and abated the matter with instructions to the trial court to conduct a retrospective competency trial, if such a trial were feasible. We have received a supplemental reporter's record and a supplemental clerk's record showing that on December 19, 2018, the trial court found that a retrospective competency trial was feasible, conducted the trial, and found Mitchell to have been competent. Here, we address Mitchell's remaining points of error.

We reverse the trial court's judgment and remand the case for a new trial because the jury charge allowed the jury to convict Mitchell for actions which do not constitute a criminal offense, and the error caused Mitchell egregious harm.

---

[1]In all three charges, Mitchell was charged as a habitual offender, and his charge of family violence assault was further enhanced by a prior conviction.

[2]In companion cause number 06-18-00014-CR, Mitchell appeals from his convictions for aggravated assault with a deadly weapon and family violence assault.

## I.    Factual and Procedural Background

After returning to their Lamar County home from a trip to Houston, Mitchell assaulted his wife, Lauren Hughes, punching her in the face, dragging her into the house, kicking and stomping her with his boots, and throwing their television on her. The next day, on July 20, 2017, the couple drove to the home of Hughes' mother, Janice Hughes, to pick up the couple's one-year-old child, who was staying with Janice while they went to Houston for Mitchell's medical appointment.

Mitchell dropped Lauren off on a county road near Janice's house, and she hid in the wooded area while Mitchell approached Janice's house to retrieve the child. Lauren ran through the wooded area and entered a small convenience store, Homer's Quick Stop. Diane Boyette, the cashier working at the time, testified that Lauren ran into the store and said she needed help. Boyette saw that one of Lauren's eyes was swollen shut and the other was nearly so. After a telephone call from Boyette, the police and medical personnel arrived a short time later, and Lauren was taken to a hospital where her injuries were photographed and she described to law enforcement officers what had happened to her.

A few days later, Mitchell was found and arrested. He was charged with aggravated assault with a deadly weapon (the boots he was wearing) and family violence assault, and after having sent almost a dozen letters to Lauren from prison, he was also charged with tampering with a witness. All the charges alleged that Mitchell was a habitual offender. Before trial, Mitchell's counsel filed a motion and supporting affidavit seeking to have a formal competency examination performed on Mitchell, which, after an informal inquiry, the trial court denied. During the trial, photographs of Lauren's injuries and the letters were admitted into evidence and shown to the jury.

3

After seeing the exhibits and hearing the testimony of Boyette, Janice, Lauren, Mitchell's mother, law enforcement personnel, and medical personnel, Mitchell was convicted on all three charges and sentenced to fifty years in prison for each offense, with the three sentences to run concurrently.

## II. Was the Jury Charge Defective?

Mitchell contends that the jury charge was fundamentally defective "because the application portion required the jury to find Mitchell guilty of tampering with a witness" based on actions which do not constitute tampering.

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury:  it is the function of the charge to lead and prevent confusion." *Id*. (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

4

Section 36.05(a) of the Texas Penal Code provides that a person commits the offense of tampering with a witness if,

> with intent to influence the witness . . . he coerces a witness or a prospective witness in an official proceeding:
>
> > (1)  to testify falsely;
> >
> > (2)  to withhold any testimony, information, document, or thing;
> >
> > (3)  to elude legal process summoning him to testify or supply evidence;
> >
> > (4)  to absent himself from an official proceeding to which he has been legally summoned; or
> >
> > (5)  to abstain from, discontinue, or delay the prosecution of another.

TEX. PENAL CODE ANN. § 36.05(a) (West 2016). Here, under the language of the indictment and jury charge, the State only charged Mitchell with tampering under Section 36.05(a)(1), "to testify falsely." TEX. PENAL CODE ANN. § 36.05(a)(1). The abstract portion of the jury charge instructed the jury that "[a] person commits the offense of tampering with a witness if, with intent to influence the witness, he coerces a witness or prospective witness in an official proceeding to testify falsely." The application portion of the charge, which tracked the language of the indictment, authorized the jury to convict Mitchell of tampering with a witness if it found beyond a reasonable doubt that Mitchell coerced Lauren "by writing letters to [her] asking her to lie, and/or asking [her] to go see [his counsel,] Mike Mosher[,] that he will help her, and/or asking [her] not to go see the District Attorney with intent to influence [her] *to testify falsely*." (Emphasis added).

It is undisputed that asking Lauren to lie amounts to witness tampering, but Mitchell contends that the jury charge is "fundamentally defective" because the application portion of the

5

charge allowed the jury to convict him of witness tampering for encouraging Lauren to meet with his attorney and/or for encouraging her not to meet with the district attorney, neither of which constitute tampering with a witness. We agree that asking her not to go see the district attorney does not constitute the offense charged in this case.

"Conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute." TEX. PENAL CODE ANN. § 1.03(a) (West 2011). "A Texas conviction can never rest on conduct which is not a criminal offense by law." *Hammock v. State*, 211 S.W.3d 874, 879 (Tex. App.—Texarkana 2006, no pet.) (citing *Lawton v. State*, 913 S.W.2d 542, 551 (Tex. Crim. App. 1995), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998)). Similarly, a jury charge is fundamentally defective if it . . . authorizes conviction on a set of acts that do not constitute the offense charged. *Zuckerman v. State,* 591 S.W.2d 495, 496 (Tex. Crim. App. [Panel Op.] 1979); *Green v. State*, 233 S.W.3d 72, 79–80 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). A charge allowing the jury to convict under alternative theories is defective if one of the theories is legally invalid. *Robinson v. State*, 266 S.W.3d 8, 12–13 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Green*, 233 S.W.3d 80 n.7; *Guevara v. State*, 191 S.W.3d 203, 208 (Tex. App.—San Antonio 2005, pet. ref'd).

Here, the charge authorized the jury to convict Mitchell under three alternative grounds. However, one of those grounds (encouraging Lauren not to meet with the district attorney) is not an offense under Section 36.05(a)(1). *See* TEX. PENAL CODE ANN. § 36.05(a)(1); *Zuckerman*, 591 S.W.2d at 496. Therefore, the jury charge was defective because it authorized the jury to convict

6

Mitchell for actions which, in this case, did not constitute tampering with a witness.[3]  *See Robinson*, 266 S.W.3d at 12–13.

The level of harm necessary to require reversal due to jury charge error is dependent on whether the appellant properly objected to the error.  *Abdnor*, 871 S.W.2d at 732.  Here, because Mitchell did not object to the charge, we will not reverse unless the record shows the error resulted in egregious harm, *see Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)), such that he did not receive a fair and impartial trial.  *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.).  "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."  *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007).  In making this determination, we review "the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole."  *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171).  Direct evidence of harm is not required to establish egregious harm.  *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

We first consider the entirety of the jury charge.  *See id.*  The abstract portion of the charge informed the jury that "[a] person commits the offense of tampering with a witness if, with intent

---

[3]Citing *Hardie v. State*, the State contends that because the jury charge corresponded to the allegations in the indictment, there is no jury charge error.  *Hardie v. State*, 588 S.W.2d 936, 938 (Tex. Crim. App. [Panel Op.] 1979).  However, *Hardie* is inapplicable because the point of error in *Hardie* was that the jury charge did not track the language of the indictment, whereas here, the issue is whether the charge is defective for allowing the jury to convict for noncriminal actions.  *See id.* at 938–39.

7

to influence the witness, he coerces a witness or prospective witness in an official proceeding to testify falsely" and that a person acts with intent "when it is his conscious objective or desire to engage in the conduct or cause the result." The application portion of the charge instructed the jury to find Mitchell guilty of tampering with a witness if it found, beyond a reasonable doubt, that Mitchell asked Lauren to lie, encouraged her to meet with his defense counsel, and/or asked her not to meet with the district attorney. As explained previously in this opinion, one of the three theories permitted the jury to convict Mitchell for conduct that does not constitute an offense, and we are not free to presume that the jury based its conviction on a legally valid ground. *See Guevara*, 191 S.W.3d at 208.

While incarcerated awaiting indictment and trial, Mitchell mailed Lauren eleven handwritten letters. In the letters, Mitchell claimed to have found faith in God and repented of his evil ways and asked Lauren to follow God's command to forgive him. Through the letters, Mitchell also repeatedly apologized for hurting her and asked Lauren to "protect" him, meet with his defense counsel, and sign an affidavit stating that she wanted to drop the charges against him and that her prior statements to the police were not completely accurate. One letter tells Lauren that "the only way [he] can get out of this" is for her to tell defense counsel that she lied about what happened to her because she suspected Mitchell of having an affair, that she was actually assaulted by "two girls," that the three of them fought inside the house, and that after one of them hit her with something, she did not remember anything until the next morning when she fought with Mitchell, believing that he had sent the two girls to attack her. Throughout the

8

correspondence, Mitchell also encouraged Lauren to be absent from trial and not to meet with or speak with the district attorney.

The State argued that in the letters, Mitchell asked her to help him stay out of prison, to help him avoid paying the price for his crime, to lie under oath for him, and to hide from anyone who could make her appear in court. The State argued that the letters clearly intended to coerce Lauren, because they warned that if she refused to help him, he would die in prison, which would hurt her more than what he did to her, and that if she refused God's command to forgive him and his requests for help, she would be "damned for eternity." Mitchell argued that tampering requires coercion and that Lauren did not feel coerced since the letters failed to motivate Lauren into doing anything. Mitchell maintained that the letters were merely Mitchell, in a "pathetic state," begging and pleading for help and "reaching out for anything to try to escape the responsibility at some level for what he did."

Because the jury was instructed that it was "bound by the law received" in the charge, the presumption that the jury understood and followed the trial court's erroneous instruction strongly supports a finding of egregious harm. *See Hammock*, 211 S.W.3d at 879 (concluding egregious harm shown when alternative theory permitted conviction for conduct not defined as an offense); *Hutch*, 922 S.W.2d at 172. Furthermore, the United States Constitution requires that we set aside a verdict "in cases where the verdict is [constitutionally] supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978). The United States Supreme Court has explained the rationale for this rule:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—*whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime.* When, therefore, jurors have been left the option of relying on a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.

*Griffin*, 502 U.S. at 59 (emphasis added).[4]

Based on our examination of the foregoing factors, we find that erroneously instructing the jury that it could convict Mitchell of tampering with a witness for an action or actions that do not constitute an offense caused Mitchell egregious harm. *See Robinson*, 266 S.W.3d at 15 (egregious harm found from charge authorizing jury to convict defendant of capital murder where one of the two grounds alleged did not constitute capital murder); *Hammock*, 211 S.W.3d at 879 (egregious harm caused by charge alleging an alternative theory that did not constitute an offense); *Green*, 233 S.W.3d at 80 n.7, 86 (charge authorizing jury to convict on one invalid theory caused egregious harm even though charge alleged three other, valid alternative theories); *Guevara*, 191 S.W.3d at 208. Accordingly, we sustain this point of error.

---

[4]The Court contrasted this result to situations in which the jury enters a general verdict of guilt on a question submitting various grounds in the disjunctive in the absence of legally sufficient evidence on some, but not all, of those grounds, which generally do not require reversal. *See Griffin v. United States*, 502 U.S. 46, 59 (1991) ("Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence.").

We reverse the trial court's judgment and remand the case for a new trial.


Bailey C. Moseley
Justice

Date Submitted:     January 10, 2019
Date Decided:       March 14, 2019

Publish

11