

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00099-CV

_____

IN THE MATTER OF M.S., A JUVENILE

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-103751-16

Before Kerr and Birdwell, JJ.; and Rebecca Simmons, J. (Sitting by Assignment)
Memorandum Opinion by Justice Simmons

## MEMORANDUM OPINION

A jury found that M.S. had engaged in delinquent conduct by committing the offenses of capital murder and aggravated robbery. The trial court entered affirmative findings pursuant to the jury findings and found that M.S. was in need of rehabilitation and placed her in the custody of the Texas Juvenile Justice Department for 20 years with the possibility of transfer to the Institutional Division of the Texas Department of Criminal Justice.[1]

M.S. appeals, contending in points one through four that the trial court erred by including a "legal-duty" parties charge from section 7.02 of the Texas Penal Code because M.S. had no legal duty to prevent the commission of the capital-murder and aggravated robbery offenses. In her fifth point, M.S. complains that the trial court erred by placing "law of parties" language in an incorrect location within the application paragraphs relating to the capital-murder and robbery offenses thereby authorizing the jury to adjudicate Appellant delinquent of (1) the capital murder charges as a principal only;[2] and (2) the aggravated-robbery charges simply because she was a party to using or exhibiting a firearm. We reverse the judgment of the trial court.

---

[1]See Tex. Fam. Code Ann. § 54.04(d)(3)(A).

[2]It is undisputed that M.S. did not shoot a gun during the incident.

# BACKGROUND

M.S. was charged as a party to the capital murder and aggravated robbery that occurred on the evening of July 26, 2016, at the home of Zach Beloate (Beloate), which left Beloate wounded and his roommate Ethan Walker (Ethan) dead. M.S. had turned 16 years old the day before the incident. The testimony at trial revealed several juveniles[3] and adults participated in the incident including Ariana Bharrat (Ariana), Megan Holt (Megan), M.S., T.K., J.B., Latharian Merritt (Larry), and Sean Robinson (Bankz). According to Megan, M.S. brought up the idea of stealing from Beloate because she was romantically involved with him and because Beloate and Ethan were drug dealers who often had drugs and cash on the premises. M.S. developed the plan and explained the layout of Beloate's apartment.

On the evening of July 26, Ariana drove Megan, M.S., T.K., and Bankz to Beloate's. Larry and J.B. were in another car driven by one of Larry's girlfriends. Larry and Bankz were armed with guns; J.B. had brass knuckles. The general plan was for M.S. to divert Beloate with sexual activity, Megan would keep the front door unlocked, and Bankz, J.B., and Larry would enter and threaten Beloate and Ethan while T.K. and Megan searched for drugs. Megan testified that she knew there was a plan to rob Ethan and she went to the house voluntarily.

---

[3]We will refer to any minors by their initials. *See* Tex. R. App. P. 9.8(c).

The night of the incident, M.S. and Megan were the first to enter Beloate's house and then Ariana joined them. All three ended up in Beloate's bedroom, along with Victor Landes, to smoke marijuana. Within approximately 15 minutes, Larry, Bankz, J.B., and T.K. came into the house. Bankz entered Beloate's room pointing his gun at everyone while J.B. followed. The three girls left the room, and Megan helped T.K. look for drugs. Larry displayed his gun and entered a bedroom where Ethan and a minor, A.R., were located. Ethan and Beloate were questioned concerning the location of drugs, but no drugs were found. Both Beloate and Ethan were shot, and Ethan subsequently died from the gunshot. When the three girls heard gun shots they ran to Ariana's car where T.K. and Bankz ultimately joined them before leaving for T.K.'s apartment.

At trial, M.S. offered evidence to establish that she was the victim of human trafficking and that her participation in the incident had been the result of duress by Ariana, her groomer, and Tramon Jordan (Tramon), her pimp. M.S. first met Ariana when she was 12 and Ariana was a senior in high school. She hung out with Ariana who eventually introduced her to Tramon when M.S. was 14. Thereafter, Ariana and Tramon would take M.S. to strip at clubs in Fort Worth and ultimately Las Vegas. In addition to stripping, Tramon forced M.S. into prostitution when she was 15. M.S. testified that she was unable to escape from Ariana or Tramon because they threatened to harm her family and they physically assaulted her. At trial Texas Department of Public Safety Agent Coleman and Counselor Toni McKinley, an

4

expert on human trafficking, both testified that M.S. was a victim of human trafficking.

## ANALYSIS

In points one through four Appellant complains that the trial court improperly instructed the jury in the law of parties by including an incorrect "legal duty" law of parties instruction in the abstract portion of the jury charge. According to M.S., this error flowed into the capital-murder application paragraph as well as the aggravated-robbery application paragraphs relating to Beloate and Ethan.

## I.  Standard of Review

The Texas Rules of Civil Procedure generally govern the jury charge in juvenile proceedings. Tex. Fam. Code Ann. § 56.01(b); *see In re L.D.C.*, 400 S.W.3d 572, 574 (Tex. 2013). But a juvenile proceeding is quasi-criminal; thus, criminal law precedent may be instructive in juvenile cases. *See In re C.O.S.*, 988 S.W.2d 760, 765–67 (Tex. 1999). In criminal cases, jury-charge error is reviewed using a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, the court determines whether error exists in the charge. *Id.* If there is error, we determine if the appellant has been harmed: "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* If an appellant has preserved the error by objection, we must reverse if we find "some harm" to his rights. *See id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). But where there is no objection, we will not reverse for jury-charge error unless the

5

record shows "egregious harm" to the appellant. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

M.S. did not object to the legal-duty law of parties instruction in the jury charge. When the charge error is not preserved "and the accused must claim that the error was 'fundamental,' [she] will obtain a reversal only if the error is so egregious and created such harm that [she] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). Bearing this standard in mind, we turn to the charge.

## II. Charge Error

A trial court must instruct the jury on the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14. It is well-settled that "[j]ury charges which fail to apply the law to the facts adduced at trial are erroneous." *See, e.g.*, *Gray v. State*, 152 S.W.3d 125, 128 (Tex. Crim. App. 2004) (citing *Perez v. State*, 537 S.W.2d 455, 456 (Tex. Crim. App. 1976); and *Harris v. State*, 522 S.W.2d 199, 200 (Tex. Crim. App. 1975)). This is so because if an issue is "law applicable to the case," "[t]he jury must be instructed 'under what circumstances they should convict, or under what circumstances they should acquit.'" *Id.* at 127–28 (quoting *Ex parte Chandler*, 719 S.W.2d 602, 606 (Tex. Crim. App. 1986) (Clinton, J., dissenting)). "It is not sufficient for the jury to receive an abstract instruction on the law and then to render a verdict according to a general

6

conclusion on whether the law has been violated." *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977).

The "abstract paragraphs [of a jury charge] serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017) (*citing Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). "An abstract statement of the law that goes beyond the indictment allegations usually will not present reversible error unless 'the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph.'" *Id.* (*citing Plata v. State*, 926 S.W.2d 300, 302–03 (Tex. Crim. App. 1996)).

### A. Was Inclusion of the "Legal-Duty" Theory Error?

We first address whether the inclusion of the legal-duty parties' instruction was error. M.S. argues that the trial court committed error by including a legal-duty parties' instruction in the abstract portion of the charge because there was no factual or legal basis to support a duty on M.S.'s part to prevent the offenses for which she was charged, adjudicated delinquent, and sentenced. The State argues that the inclusion of the "legal-duty" law of parties instruction was proper because M.S. had a legal duty to prevent the commission of the offense because she created the danger.

A person is criminally responsible as a party to an offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally

7

responsible, or both." Tex. Penal Code Ann. § 7.01(a). A person is criminally responsible for another's criminal conduct if:

> (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;
>
> (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>
> (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

*Id.* § 7.02(a).

The jury charge in this case contained three theories under which the jury could find M.S. criminally responsible for the offenses alleged in the petition: (1) that M.S. caused or aided an innocent or non responsible person to engage in conduct prohibited by the definition of the offense; (2) that M.S. solicited, encouraged, directed, aided, or attempted to aid another person in committing the offenses alleged; and (3) the theory in dispute in this appeal: that M.S. did not make a reasonable effort to prevent the commission of the offense when she had a legal duty to do so (the "legal-duty theory").

Specifically, the abstract portion of the charge provided:

A person is criminally responsible as a party to an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense. Each party to an offense

8

may be charged and convicted without alleging that she acted as a principal or accomplice.

A person is criminally responsible for an offense committed by the conduct of another if acting with the kind of culpability required for the offense, she causes or aids an innocent or non-responsible person to engage in conduct prohibited by the definition of the offense; or acting with intent to promote or assist the commission of the offense, she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; **or having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, she fails to make a reasonable effort to prevent commission of the offense.** If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. [Emphasis added.]

### 1. Inclusion of the "legal-duty" theory in the charge

M.S. relies on *Guevara v. State*, 191 S.W.3d 203 (Tex. App.—San Antonio 2006, pet. ref'd), to support her argument that including the "legal duty" theory in the charge was error.[4] In *Guevara*, Minnie, Guevara's mistress, shot and killed Guevara's

_____

[4]In the previous appeal of the case to the court of criminal appeals, Guevara challenged the intermediate appellate court's holding that the evidence was legally sufficient to support the verdict, and the State challenged the holding with respect to charge error. The court of criminal appeals determined the evidence was legally sufficient to support the verdict. *See Guevara v. State*, 152 S.W.3d 45, 52 (Tex. Crim. App. 2004). Although the court of criminal appeals refused to "address whether the inclusion of the legal-duty theory in the charge was error," *id.* at 52 n.28, the court nevertheless determined the intermediate appellate court applied an incorrect standard of review for charge error and remanded the cause to the intermediate appellate court to conduct a harm analysis under article 36.19 of the Texas Code of Criminal Procedure. On remand, the intermediate appellate court determined that the charge

wife, Velia. There was no allegation at trial that Guevera shot his wife. The State relied on section 7.02(a)(2) of the penal code to establish he was criminally responsible for his mistress's actions because they had plotted together to kill Velia. *Guevara*, 152 S.W.3d at 48. Similar to this case, the abstract portion of the *Guevara* charge included both the aiding language from section 7.02(a)(2) and the legal-duty language from section 7.02(a)(3) of the penal code.

At trial, the State did not present evidence to support the legal-duty theory. The charge did not define "legal duty" for the jury or "set forth the elements of any legal duty Guevara may have owed to Velia when such a duty attached." *Guevara*, 191 S.W.3d at 206. Neither party objected to the inclusion of the "legal-duty theory" in the abstract portion of the charge.

In its analysis, the San Antonio Court of Appeals noted first that as a general rule, a person has no legal duty to protect another from the criminal acts of third parties or to control the conduct of another. *Id.* at 207 (*citing Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). That general rule, absent extenuating circumstances, also extends to husbands and wives. *Id.* Consequently, the court held that "instructing the jury on the legal duty theory was error because Guevara did not have a legal duty to prevent the commission of the offense." *Id.* (citing *Medrano v.*

---

was erroneous and that Guevara suffered egregious harm, remanding the case to the trial court for a new trial. *Guevara*, 191 S.W.3d at 210.

*State*, 612 S.W.2d 576, 578 (Tex. Crim. App. [Panel Op.] 1981) (recognizing that without a legal duty arising to prevent the commission of an offense, there is no criminal conduct)); *see also* Tex. Penal Code Ann. § 6.01(c) (providing an omission or failure to perform an act is not an offense unless there is a legal duty to act).

In this case, the application paragraph was similar to that in *Guevara*, because it advised the jury that it could convict M.S. if she was acting as either a principal or a party with no further explanation. Specifically, the charge required conviction if the jury found M.S. intentionally caused the death of Ethan "by shooting Ethan Walker with a firearm, and [M.S.] was in the course of committing or attempting to commit the offense of robbery or burglary, as either a principal or a party . . . ." As in *Guevara*, faced with the phrase "as either a principal or a party" and nothing more, "it is entirely plausible that the jury would refer back to the charge's definition of when a person is criminally responsible for an offense committed by another person, a definition that included the legal duty theory." *Guevara*, 191 S.W.2d at 207. "[B]ecause Guevara had no duty to prevent Velia's death, his conviction for her murder could have been based on a legally insufficient ground." *Id.* at 208.

### 2. Did M.S. have a legal duty?

M.S. argues that charge error exists because as in *Guevara*, the legal-duty theory was a legally insufficient ground for conviction because M.S. owed no duty to prevent the offenses. The State responds that M.S.'s actions leading up to the offenses created a legal duty to prevent commission of the capital-murder and aggravated-

11

robbery offenses. The State points out that section 6.01 of the Texas Penal Code provides that: "[a] person who omits to perform an act does not commit an offense unless a law as defined by section 1.07 provides that the omission is an offense or otherwise proves that he has a duty to perform the act." Tex. Penal Code Ann. § 6.01(c). The State then turns to section 1.07 to determine if there is a "law" that provides a legal duty to prevent the commission of the offenses.

Section 1.07 defines "law" as "the constitution or a statute of this state or of the United States, **a written opinion of a court of record**, a municipal ordinance, an order of a county commissioners court, or a rule authorized by and lawfully adopted under a statute." Tex. Penal Code Ann. § 1.07(a)(30) (emphasis added). Because there appears to be no constitutional provision, statute, or rule that creates a legal duty, the State relies on written opinions by appellate courts in civil cases that articulate a common-law duty to prevent injury to others that arises when a party negligently creates a dangerous situation. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987) (finding liability for El Chico based on negligently serving intoxicating beverages resulting in car accident). The State contends that evidence M.S. planned the robbery, chose the location and victims, and provided a layout of the scene to her co-defendants created a legal duty to prevent the commission of the offenses that supports a finding of criminal responsibility for another's conduct under section 7.02(b)(3).

Under the State's theory, a person who omits to perform an act commits an offense if there is a common law duty to perform the act articulated by a court of record such as the county, district, and appellate courts in Texas. The State does not refer us to any other Texas case or authority that has adopted a similar theory that imports the civil duty to prevent injury articulated in premises-liability and other negligence cases to support a finding of legal duty under section 7.02(b)(3) of the penal code.

The State relies on *State v. Zascavage*, 216 S.W.3d 495, 497 (Tex. App.—Fort Worth 2007, pet. ref'd) as a basis for its theory that a civil common-law duty may form the basis for a finding of legal duty under the law of parties. However, *Zascavage* is not supportive. In *Zascavage*, the court examined the constitutionality of the former hazing statute set forth in Texas Education Code section 37.152 that made it an offense to fail to report hazing. *See* Tex. Educ. Code Ann. § 37.152(a)(4). Of primary concern was whether the statute provided "sufficient notice of a particular charge to a particular defendant." *Zascavage*, 216 S.W.3d at 497 (citing *Billingslea v. State*, 780 S.W.2d 271, 275–76 (Tex. Crim. App. 1989)). After noting that "the legislature's 1993 amendment to section 6.01(c) of the penal code . . . allow[s] common law duties to form the basis for criminal prosecution,"[5] the court emphasized that "penal provisions which criminalize a failure to act without informing those subject to

_____

[5]*See* Act of February 8, 1993, 73d Leg., R.S., ch. 3, § 1, 1993 Tex. Gen. Laws 10.

prosecution that they must perform a duty to avoid punishment are unconstitutionally vague." *Id.* at 497–98 (citing *Billingslea*, 780 S.W.2d at 276). The *Zascavage* court ultimately rejected the State's reliance on various education codes and civil immunity cases to create a duty to prevent hazing and declared the hazing statute unconstitutional. The State's theory in this case, based on premises-liability cases that are intensely fact specific, is even more tenuous. We have found no cases that support the State's theory and we decline to adopt it in this case.

We hold that the submission of the legal-duty theory was erroneous because M.S. had no legal duty to prevent the offenses and, therefore, the charge allowed the jury to convict M.S. based on a legally insufficient ground. *See Arteaga*, 521 S.W.3d at 339 (holding "[i]t is reversible error when an abstract instruction is given that is an incorrect or misleading statement of the law that the jury must understand to implement the application paragraphs" and citing *Plata*, 926 S.W.2d at 301-02). Here, the jury had to understand the law of parties to implement the application paragraphs, and the section 7.02(b)(c) legal-duty theory was not "law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 ("[T]he judge shall, before the argument begins, deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case."). We now turn to a harm analysis to determine if the record shows that the error resulted in egregious harm.

14

## B.    Was the Charge Error Egregious?

When considering whether a defendant suffered egregious harm, we consider not only the erroneous portion of the charge, but also other relevant aspects of the trial. *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza*, 686 S.W.2d at 171. These include: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. The reviewing court must conduct this examination of the record to "illuminate the actual, not just theoretical, harm to the accused." *Id.* at 174. Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *See Sanchez*, 209 S.W.3d at 121.

### 1. Entire Charge.

In determining whether a charge error is egregiously harmful, we first consider whether a reasonable jury referring to other parts of the charge would find a correct statement of the law or would instead be confused or misled. *Vasquez v. State*, 389 S.W.3d 361, 371 (Tex. Crim. App. 2012); *Ngo*, 175 S.W.3d at 752 (examining whether error was "corrected or ameliorated in another portion of the charge" or "was compounded by [a] misleading statement" in the charge). "[O]mitting an element necessary to convict a defendant is less likely to be harmful if the elements

are accurately set forth in another section of the charge." *Uddin v. State*, 503 S.W.3d 710, 717 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see Riley v. State*, 447 S.W.3d 918, 929 (Tex. App.—Texarkana 2014, no pet.) (citing *Vasquez*, 389 S.W.3d at 367; *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)).

In this case, the application paragraph instructed the jury that if it found that M.S. "intentionally caused the death of Ethan Walker, by shooting Ethan Walker with a firearm, and M.S. was in the course of committing or attempting to commit the offense of robbery or burglary, **as either a principal or a party**, then you will find that M.S. has engaged in delinquent conduct by committing the offense of capital murder as alleged in the Petition." [Emphasis added.]. Similar application paragraphs relating to the aggravated-robbery offenses referenced M.S.'s actions "as either a principal or party." The specific jury questions also asked the jury if M.S. committed the offenses as either a principal or a party. For further clarification, jurors would have referred back to the abstract portion of the charge which included all three modes of being criminally responsible under section 7.02(b).

We have already determined that M.S. did not have a legal duty to prevent the commission of the offense, but the jury could have convicted M.S. based on a legally inapplicable theory of criminal responsibility. Based on the legal-duty theory in the abstract portion of the charge, the jury could have concluded that M.S. "having a legal duty to prevent commission of the offense, and acting with intent to promote or

16

assist its commission, . . . fail[ed] to make a reasonable effort to prevent commission of the offense."

In addition to the wrongful inclusion of legal duty in the abstract portion of the charge, M.S. also complains about the poor wording of the application paragraphs that authorized the jury to adjudicate her delinquent only as a principal.[6] The capital-murder application paragraph instructed the jurors to adjudicate M.S. delinquent if they believed beyond a reasonable doubt that she:

> intentionally cause[d] the death of Ethan Walker, by shooting Ethan Walker with a firearm, and [M.S.] was in the course of committing or attempting to commit the offense of robbery or burglary, **as either a principal or party,** then you will find that [M.S.] has engaged in delinquent conduct by committing the offense of capital murder as alleged in the Petition. [Emphasis added.]

M.S. argues that this instruction asked the jury whether M.S. physically shot Ethan and caused his death as a principal and only applied the "principal or party" language to the robbery or burglary allegation. M.S. argues she should not have been convicted of capital murder because there was no evidence that she personally shot Ethan.

M.S. argues the aggravated-robbery application paragraphs were equally erroneous. The aggravated-robbery application paragraphs pertaining to Ethan

---

[6]M.S. discusses this error in point five of her brief but because we must consider the entire charge, we examine the application paragraphs in our egregious error review. *See Vasquez*, 389 S.W.3d at 366.

17

instructed the jury to adjudicate M.S. delinquent if it believed beyond a reasonable doubt that she:

> intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten[ed] or place[d] Ethan Walker in fear of imminent bodily injury or death, and the Respondent did then and there use or exhibit a deadly weapon, to wit, a firearm, as either a principal or a party, then you will find that [M.S.] has engaged in delinquent conduct by committing the offense of aggravated robbery as alleged in the Petition.

M.S. argues the aggravated-robbery application paragraph instructed the jurors to adjudicate her guilty if they believed beyond a reasonable doubt that she personally robbed Ethan, and the "as either a principal or a party" language applied only to the use of a deadly weapon. M.S. argues there was no evidence that M.S. personally robbed Ethan. According to M.S., the aggravated-robbery application paragraph relating to Beloate is equally problematic because it instructed jurors to adjudicate her delinquent if they believed beyond a reasonable doubt that she:

> [i]ntentionally or knowingly, while in the course of committing theft of property and with the intent to obtain or maintain control of said property, cause[d] bodily injury to Zachary Beloate, by shooting him with a firearm and [M.S.] did then and there use or exhibit a deadly weapon, to wit, a firearm, **as either a principal or a party**, then you will find that [M.S.] has engaged in delinquent conduct by committing the offense of aggravated robbery as alleged in the Petition. [Emphasis added.]

M.S. argues that this aggravated-robbery application paragraph instructed the jurors to adjudicate M.S. guilty if they believed beyond a reasonable doubt that she personally robbed Beloate and that the "as either a principal or a party" language applied only to

18

the use of a deadly weapon, and she asserts that there is no evidence that M.S. possessed a deadly weapon during the incident.

The placement of the "principal or party" language does not appear to modify the entire offense, is confusing, and more importantly for this review compounds the error of including the legal-duty theory as a mode under the law of parties instruction in the abstract portion of the charge.[7]  *Vasquez*, 389 S.W.3d at 371.  In parsing through the application paragraphs the jury would look to the abstract for an understanding of the law of parties and then try and apply the law to the poorly worded application paragraphs.

We conclude that the entirety of the jury charge weighs in favor of finding egregious harm. We next consider whether this harm was ameliorated by other relevant aspects of the trial.

### 2.  The state of the evidence.

M.S. relies on *Guevara*, and points to the similarities in the nature of the evidence.  As in *Guevara*, there was evidence and instructions that would properly allow the jury to convict M.S. under the aiding theory of section 7.02(b)(2).  *Guevara*, 191 S.W.3d at 207.  In *Guevara* there was no evidence Guevara had a legal duty, but the State repeatedly argued that he should be found guilty because he should have

---

[7]We do not address M.S.'s claims under point five, rather we are reviewing other portions of the charge to determine if they ameliorate the error in the abstract section in accordance with *Vasquez*, 389 S.W.3d at 371.

19

prevented the murder. *Id.* at 208. In this case, the State also argued that M.S. did nothing to stop the offense or warn the victims.[8] Specifically, she did not stop to help her boyfriend Beloate or Ethan after they were shot. According to M.S., the jury was allowed and even encouraged to adjudicate her delinquent under the legal-duty theory that was not authorized in this case.

The State responds that this case is distinguishable from *Guevara* because it is reasonable from the evidence, argument, and instructions that the jury did not base its verdict on the "legal-duty" theory.[9] Rather, the State argues that the evidence established M.S. "was an integral part of the offenses." She planned the robbery; chose the location and victims; and decided more manpower and guns were needed for the success of the plan. In closing, the State directed the jury to the second law of parties' instruction in the jury charge that mirrored section 7.02(b)(2). Further, although in closing the State criticized the failure of M.S. to stop the offenses and help the victims, the State argues these statements were in the context of disproving M.S.'s

---

[8]"She got up and walked out of that bedroom while her boyfriend was being beaten with brass knuckles and then shot. Did not stop it. Did not render first aid. Did not call 911." "She does not stop to help Zachary or Ethan when the gunshots start. She does not call 911 when Zach is bleeding. When Ethan Walker needed every second of life left to him, her response was to run out and get inside of a car . . . ."

[9]In *Guevara* no evidence was presented that Guevara had a legal duty to his wife, although the State argued throughout trial that Guevara had a duty to protect his wife. 191 S.W.3d at 207.

affirmative defense of duress. The State argues they showed that M.S. was not threatened or compelled to commit the offenses and could have left at any time. The State claims "it can be presumed the jury based its verdict on the aiding theory." We disagree. There was conflicting evidence regarding the ring leaders of the event and M.S.'s role in the incident. There was no evidence that M.S. tried to stop the incident. Reviewing the record in its entirety, it is just as likely that the jury based its verdict on an inapplicable legal-duty theory.

"When the jury is incorrectly instructed on disjunctive theories and it renders a general verdict of guilty, the harm analysis must take into account the type of error in the charge." *Uddin*, 503 S.W.3d at 720 (citing *Guevara*, 191 S.W.3rd at 207-08). A charge authorizing conviction on an improper legal theory is not free from egregious error simply because the evidence is sufficient to support the allegations of the indictment. *Id.*; *see Lang v. State*, 698 S.W.2d 223, 225 (Tex. App.—Dallas 1985, no pet.).[10] When "jurors have been left the option of relying on a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." *Griffin v. United States*, 502 U.S. 46, 59, 112 S. Ct. 466, 474 (1991). In such cases, "the proper rule to be applied is that which requires a verdict to

---

[10]In the civil context, when the trial court submits a broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an invalid theory. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000).

be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312, 77 S. Ct. 1064, 1073 (1957); *see also Griffin*, 502 U.S. at 59, 112 S. Ct. at 474; *Robinson v. State*, 266 S.W.3d 8, 12 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Green v. State*, 233 S.W.3d 72, 85 n.9 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Guevara*, 191 S.W.3d at 208.

There is evidence in this case from which a rational juror could have found appellant guilty beyond a reasonable doubt based on the law of parties aiding section 7.02(b)(2). However, the charge also implied Appellant had a legal duty to prevent the commission of the crime: "**having a legal duty to prevent commission of the event** [she] acts with intent to promote or assist its commission, and fails to make a reasonable effort to prevent the commission of the offense." [Emphasis added.]. The entirety of the evidence weighs toward a neutral finding of egregious error.

### 3. Argument of Counsel.

Although the State did not mention the word "legal duty" in closing, it repeatedly criticized M.S. for her failure to prevent the incident or seek help for the victims. The prosecutor referred to the evidence and the fact that M.S. did not help her boyfriend: "She got up and walked out of that bedroom while her boyfriend was being beaten with brass knuckles and then shot. Did not stop it. Did not render first aid. Did not call 911." "She does not stop to help Zachary or Ethan when the gunshots start. She does not call 911 when Zach is bleeding. When Ethan . . . needed

22

every second of life left to him, her response was to run out and get inside of a car . . . ."

Although the State argues that the preceding comments were directed to the duress affirmative defense, the statements do not address the duress exercised by Ariana over M.S. The jury had been instructed by the court and the attorneys to follow the court's charge as written. It is doubtful they ignored the instruction. The argument of counsel weighs toward a finding of egregious error.

### 4. All Other Relevant Information in the Record.

We find no other information in the record relevant to harm. *See, e.g., Wall v. State*, No. 02-18-00065-CR, 2019 WL 2041839, at *7 (Tex. App—Fort Worth May 9, 2019, no pet.) (mem. op., not designated for publication).

### CONCLUSION

Although there is evidence in the record that supports a conviction under the aiding section of the law of parties, it is equally likely the jury may have convicted M.S. under the legal-duty theory and exposed appellant to conviction under an invalid theory. The charge erroneously allowed the jury to convict M.S. of capital murder and aggravated robbery under an improper legal-duty theory. We hold that this charge error was egregiously harmful because it affected the very basis of the case and deprived M.S. of a valuable right to be tried and convicted under a correct theory. These errors effectively denied M.S. a fair and impartial trial; therefore, we sustain M.S.'s points one, two, three, and four. Having sustained these points, we do not

23

reach appellant's fifth point regarding the wording of the application paragraphs. *See* Tex. R. App. P. 47.1  Accordingly, we reverse the trial court's judgment and remand the cause for a new trial.

/s/ Rebecca Simmons

Rebecca Simmons
Visiting Justice

Delivered:  August 8, 2019